By the Court.—Speir, J.
As to the question of the payment of the premiums for the second insurance year the evidence is conclusive that a receipt for the annual premium of $52, on the policy for $2000, was sent to Dr. Butler by defendant with a statement that they were charged to him. The -first semi-annual premium of the third years’ insurance was paid to defendant together with the premium on a $3000 policy, by Dr. Butler’s check for $66.15. These are the facts relating to the payment of the premiums involved in the issue by the pleadings. The second semi-annual premium of the third insurance year, and the first semiannual premium of the fourth insurance year, during *351 which Dr. Butler died, were duly tendered to the defendant.
The first question of law in the case is—Did Dr. Butler become liable to pay such premium, and was the policy continued in force by the delivery of the renewal receipts for the second year, accompanied with the statement by the defendant that they were charged to him ?
There can be no question where mutual accounts are kept between the parties, that charging a premium to the account of the insured, is equivalent to payment. It is to be remembered in this case, the business was transacted between the insured and the acting officers of the company, and not by its agents. The defendant’s president, Dr. Lambert, testified that Dr. Butler told him he had asked the company’s secretary to send him the receipts, telling him that he would send the money, and thereupon Lambert told Dr. Butler that by the provisions of the policy the receipts would not be good for anything until he had paid, and that they were good for nothing. It is evident that the defendant did not cancel the insurance, but considered the policy still in force and the credit still continuing for three months after the alleged conversation. In January, 1873, it sent prematurely to Dr. Butler a notice of premium to become due on the 18th of that month. The defendant’s secretary wrote to him May 10, 1873, that the sending the notice in January was “of course an inadvertence,” and he enclosed a statement of account, and proposed that thereafter when Dr. Butler took defendant’s receipts for premiums,- he should give “at the same time a due-bill, and then each side has evidence of the settlement up to a given date.” The defendant’s secretary wrote to him on July 15, 1873, that his check for §66.15 had been credited to Ms account. The defendant also wrote to Butler on September 35, 1871, that he was charged *352 on the second year with $2.51, the balance against Mm on the settlement for the first year. The facts conclusively show that the defendant did keep an account with Dr. Butler during the second insurance year, and did continue to give him credit. The premium was paid when the receipts were given (Prince of Wales, &c. Co. v. Harding, Ellis & Bl. Q. B. 181).
The second question is—Did the acceptance of Dr. Butler’s check for $66.15, sent July 12,1872, enclosed with a notice of premium falling due on July 18, 1872, and its collection by defendant, waive any previous default, and continue the policy in force to January 18, 18731
The company wrote to Mm that his check had been received and credited to his account, and that it was not sufficient to balance his indebtedness on the last year’s premiums, and requested a remittance. Dr. Butler had paid the second year’s premiums by the insertion of advertisements, and he held the defendant’s receipts therefor; and in May, 1872, he wrote its secretary that notices had been erroneously sent in January, for payments to fall due that montli. The defendant’s secretary replied that the sending of notice in January was of course an inadvertence. Moreover, Dr. Butler had specified the purpose for which the check was sent. The rule is, that the party paying has the right to make the application at the time of payment, which he may do either by words or by conduct indicating his intention (Stone v. Seymour, 15 Wend. 19 ; Simpson v. Jughan, 2 Barn. & Cress. 65).
The defendant’s fifth exception was to the denial of its request to go to the jury upon the ground of fraud alleged to have been practiced by Dr. Butler in rendering bills for advertisements which were not inserted.
From an examination of all the evidence it is apparent that the alleged fraud was merely a mistake, to *353 which Dr. Butler called defendant’s attention as soon as discovered and from which no injury resulted. There is no allegation in the answer that there was any fraud in the bills presented for payment for the insertion of advertisements in the “ Reporter,” at the time of settlement and the delivery of the renewal receipts, though, the facts - at the time must have been well known.
The defendant’s second exception relates to the exclusion of testimony concerning its cancellation of the policy in December, 1872, and what its practice was with reference to the actual entry of the cancellation. There was no evidence or offer of evidence to show that Dr. Butler or the plaintiff had any knowledge or intimation of the cancellation or of defendant’s practice. Ho valid cancellation of, a policy can be made during a period covered by a paid or tendered premium, or during the term of a credit which has not been terminated by a legal demand of payment and notice that default will be followed by forfeiture.
The plaintiff must have judgment upon the verdict in accordance with plaintiff’s motion.
Curtis, Ch. J., concurred.